IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEANNA LYNN WADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACTION NO. 1:06cv182-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

The plaintiff, Deanna Lynn Wade ("Wade"), applied for supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Wade then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be reversed and this case be remanded for further proceedings.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Wade was 40 years old at the time of the hearing before the ALJ. (R. 260.) She completed the tenth grade and obtained a General Education Diploma. (*Id*.) Wade's prior work experience includes working as a care giver, fast-food worker, and housekeeper. (R.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

262.) Wade alleges that she became disabled due to degenerative disc disease, scoliosis, sciatica, and a depressive disorder. (R. 56, 272-73.) Following the hearing, the ALJ concluded that Wade has severe impairments of Type I diabetes mellitus and degenerative disc disease. (R. 15, 18.) The ALJ determined that Wade has the residual functional capacity to perform the full range of light work. (R. 18, 20.) Accordingly, the ALJ concluded that Wade is not disabled. (R. 20.)

## IV.  THE PLAINTIFF'S CLAIMS

Wade presents the following issues for the court's review:

(1)  Whether the ALJ committed reversible error in mechanically applying the Medical-Vocational Guidelines and in not obtaining vocational expert testimony.

(2)  Whether the ALJ's credibility finding is based on substantial evidence.

(3)  Whether this Court should remand this case with instructions to obtain a medical source statement given the lack of RFC assessments from any examining or treating physicians.

## V.  DISCUSSION

Wade raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of all of Wade's specific arguments because the court concludes that the ALJ erred as a matter of law and, thus, this case is due to be remanded for further proceedings.

Wade complains that the ALJ failed to properly evaluate and credit her subjective complaints of pain. Here is what the ALJ said.

> The claimant's allegations of debilitating symptomotology are inconsistent with the medical evidence; the lack of an opinion supportive of disability by any treating physician; the lack of persistent and regular treatment, which could have been expected of an individual with a functionally debilitating impairment; and the absence of any documented persistent reliable manifestations of a disabling loss of functional capacity resulting from such symptoms.  Moreover, the claimant's activities of daily living are either inconsistent with prior accounts, or are not suggestive of disability.  For example, she told the examining physician that she could engage in normal activities of daily living.  The state agency consultant also noted normal activities in finding in arriving (sic) at her PCE.  Although at the hearing the claimant attested to extremely limited, indeed almost nonexistent activities, these assertions are inconsistent with earlier reports of more varied activities.  Importantly, she does not take prescription medication, and has never seen a pain management specialist.  Overall her medical treatment has been sporadic.

(R, 18)

 "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an  objectively determined medical condition of such severity that it can reasonably be expected to give rise to the

5

alleged pain.  *Landry, supra*.  A brief review of Wade's medical records will set the scene for the court's conclusions.

Wade alleges that she suffers wrist and back pain.  Wade testified that her back "locks up on her" every three or four months, that treatment with pain shots and muscle relaxers relieves her pain for four or five days, that standing or walking increases her pain, and that she is afraid to drive.  (R. 266-68.)  She also stated that her wrists hurt when it rains, that she is unable to get out of the bathtub, and that she has difficulty lifting heavy objects.  (R. 270-71.)  The medical records demonstrate that, on September 11, 1997, Wade presented to the emergency room at USA Knollwood Hospital with complaints of "sharp pains in [her] tail bone" and severe lower back pain.  (R. 104-05.)  While at the hospital, Wade was administered Darvocet, a pain medication.[4]  (R. 105.)  X-rays of Wade's spine indicated "evidence of mild dextroscoliosis." (R. 107.) Upon discharge, Wade was instructed to use an ice pack and was prescribed Naprosyn and Soma.[5]

On September 17, 2003, Wade presented to Southeastern Alabama Medical Center, reporting that her wrist was pulled by another person.  (R. 131.)  After reviewing Wade's x-rays, the radiologist found "partial sublaxation of first MP joint at the base of the first metacarpal" and determined that "this is probable chronic based on the osteoarthritis evident

---

[4] Darvocet contains propoxyphene, a centrally acting narcotic analgesic agent.  Physicians' Desk Reference, 53rd ed. (1999) at p. 1567.

[5] Naprosyn, also known as Anaprox, is an over-the-counter anti-inflammatory medication.  Physicians' Desk Reference, 53rd ed. (1999) at p. 2672.  Soma is a muscle relaxant.  *Id.* at p. 3203.

. . . ." (R. 139.) Wade was prescribed Anaprox and Lorcet.[6] (R. 142.) On October 17, 2003, Wade returned to Southeastern Alabama Medical Center, reporting an acute onset of low back pain while cleaning her home. (R. 152.) Wade was administered Demerol, Toradol, and Robaxin; the administration of narcotics, however, did not lessen her symptoms.[7] (R. 147, 153.) The next day, Wade received a lumbar epidural steroid injection of Lidocaine and Triamcinolone.[8] (R. 150.) X-rays of Wade's spine indicated "advanced hypertrophic/degenerative changes and probably element of old endplate compression deformities." (R. 162.) In addition, an MRI indicated "mild/moderate central spinal stenosis at L3-4 and L4-5. This appears to be a combination of congenitally shortened pedicles and superimposed disc bulges. . . ." (R. 164.) Upon discharge from the hospital on October 20, 2003, Wade was prescribed Lortab, Robaxin, and Vioxx.[9]

On October 23, 2003, Wade presented to Southern Bone and Joint Specialists with complaints of spasms and stiffness in her leg. (R. 227.) Medical personnel advised Wade

---

[6] Lorcet is a combination of hydrocodone bitartrate and acetaminophen supplied in tablet form for oral administration. Physicians' Desk Reference, 53rd ed. (1999) at p. 1027. Hydrocodone bitartrate is an opioid analgesic and antitussive. *Id*.

[7] Demerol, also known as meperidine hydrochloride, is a narcotic analgesic with multiple actions qualitatively similar to those of morphine. Physicians' Desk Reference, 53rd ed. (1999) at p. 2780. Toradol is a nonsteroidal anti-inflammatory drug. *Id.* at p. 2716. Robaxin is a medication used to treat acute, painful muscoskeletal conditions. *Id.* at p. 2646.

[8] Lidocaine hydrochloride is a local anestethic. Physicians' Desk Reference, 53rd ed. (1999) at p. 628. Triamcinolone is a corticosteroid. *Id*. at p. 1039-40.

[9] Lortab is a combination of acetaminophen and hydrocodone bitartrate, an opioid analgesic and antitussive, supplied in tablet form for oral administration. Physicians' Desk Reference, 53rd ed. (1999) at p. 3162. Robaxin is used for the relief of discomforts associated with acute, musculoskeletal conditions. *Id*. at p. 2646. Vioxx is a non-steroidal anti-inflammatory drug. *Cronon v. Barnhart*, 244 F.Supp. 2d 1286, 1289 n. 10 (N.D. Ala. 2003) (citing Physicians' Desk Reference, 56th ed. (2002)).

to "give [the] epidural more time" and refilled her prescriptions for Robaxin and Vioxx. (*Id.*) On November 10, 2003, Wade reported to her orthopaedic specialist at Southern Bone and Joint Specialists that her pain had worsened and began radiating down her left knee approximately five days after receiving the epidural injection. (*Id.*) Dr. Robert Dean Lolley noted that his examination of Wade "show[ed] marked tenderness on the left lumbar paraspinous muscles even to the most gentle touch" and assessed that she suffered from "lumbar strain with some mild left sciatica" and "some underlying mild to moderate central spinal stenosis L3-4, L4-5." (*Id.*) Wade was prescribed Naprosyn and advised to use a heating pad. (*Id.*)

On February 17, 2004, Dr. David Arnold, a consultative physician, noted that Wade's "symptoms of pain were quite significant even with the touch of the stethoscope on her chest" and that Wade "reported the pain into the back." (R. 198.) Dr. Arnold also noted that Wade's symptoms were suggestive of deteriorating discs. (*Id.*)

On May 14, 2004, Wade presented to the emergency room at Wiregrass Medical Center with complaints of pain in the left flank area. (R. 250.) She was administered Demerol to treat her symptoms. (*Id.*) Upon discharge, Wade was prescribed Ultram.[10] (*Id.*) On July 9, 2004, Wade presented to the emergency room at Southeast Alabama Medical Center, reporting that her "legs gave out [while she] was standing in [the] kitchen." (R. 239.)

---

[10] Ultram is a centrally acting analgesic and is indicated for the management of moderate to moderately severe pain.  Physicians' Desk Reference, 53rd ed. (1999) at p. 2254-55.

8

Wade received injections of Toradol and Norflex.[11] Upon discharge, Wade was prescribed Motrin, Lorcet, and Flexeril.[12]  (R. 238.)

On July 28, 2004, Wade returned to Southeast Alabama Medical Center for an MRI, reporting a history of back pain and bilateral leg pain and numbness.  (R. 229.)  The MRI indicated that Wade suffered from "mildly advanced discogenic degenerative changes for age" and "moderate spinal stenosis L3-4 and L4-5 [which] appears to be a result of acquired and congenital factors. . . ."  (R. 230-31.)

The ALJ characterized this history as a "lack of persistent and regular treatment."  (R. 18)  That characterization begs the question; however, because the record shows that Wade did seek treatment, and it is disingenuous at best to disregard her complaints because she did not seek what the ALJ thought was *enough* treatment.  Moreover, to the extent that the ALJ discredited Wade's complaints based on his percept that Wade did not persistently and regularly seek medical treatment, the ALJ failed to properly consider Wade's ability to afford treatment.  Certainly, failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, but in this circuit poverty can excuse non-compliance with prescribed medical treatment or the failure to seek treatment.  *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  In her application for supplemental benefits, Wade indicated that she was unable to afford medical care or prescriptions.  (R. 101-02.)  Wade testified that she chooses to go to the

---

[11] Norflex injections are used for the relief of discomfort associated with acute painful musculoskeletal conditions.  Physicians' Desk Reference, 53rd ed. (1999) at p. 1662.

[12] Flexeril relieves skeletal muscle spasm of local origin without interfering with muscle function.  Physicians' Desk Reference, 53rd ed. (1999) at p. 1793.

9

hospital emergency room, instead of a doctor's office, because she "can make payments when she has the money" and that she cannot afford prescription medication and must substitute over-the-counter medicines for pain. (R. 266-67.) The record indicates that Wade occasionally received samples of medication. (R. 108.)

Because the ALJ failed to properly consider Wade's subjective complaints of lower back pain along with the medical records demonstrating that Wade sought treatment for her condition when she was financially able to do so, the court cannot conclude that the ALJ's finding that Wade's medical condition is not severe within the meaning of the regulations is supported by substantial evidence. The court likewise concludes that the failure of the ALJ to properly consider Wade's back pain, which is a non-exertional impairment, compels the court to conclude that the ALJ's conclusion that Wade's ability to perform light work is not significantly compromised is not supported on the record. It follows that the ALJ's reliance on the grids and the failure to secure the testimony of a vocational expert was error. In his analysis, the ALJ concluded that

> even allowing for the occasional exacerbation of pain from moderate degenerative disc disease, the claimant retains the residual functional capacity to perform work at the light level of exertion. Moreover, as previously stated, she does not have any nonexertional limitations which would preclude work at this level.

(R. 19.) Accordingly, the ALJ relied on Rule 202.20 of the Commissioner's Medical-Vocational Guidelines (grids) to conclude that Wade is not disabled. Exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that

significantly limit the claimant's basic work activities. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

> [I]n determining residual functional capacity only exertional limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments exist the grids may still be applicable. [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level. Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

For these reasons, the ALJ's reliance on the grids and failure to secure the testimony of a vocational expert was error. *Foote*, 67 F.3d at 1559 (when non-exertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert"); *Chester*, 792 F.2d at 132 (The burden of showing by substantial evidence that a person who can no longer perform her former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.). On remand, the ALJ must properly consider Wade's subjective complaints of pain and secure the testimony of a vocational expert.[13] The court

---

[13] Wade also asserts that the ALJ failed to consider the impact of her obesity on her ability to perform other work. The record demonstrates that, on February 17, 2004, Wade weighed 270 pounds and was 5'2"

11

will enter a separate final judgment.

Done this 27th day of February, 2007.

                                               /s/Charles S. Coody
                                               CHARLES S. COODY
                                               CHIEF UNITED STATES MAGISTRATE JUDGE

---

tall. (R. 197.) Additionally, May 2004 hospital records indicate that Wade suffered from obesity. (R. 250.) The ALJ did not discuss Wade's obesity in his analysis. The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singularly or in combination – to create a disability. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *See Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). Consequently, the Commissioner should insure that the ALJ fulfills his responsibility to consider all of the plaintiff's impairments on remand.